UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KLAUS JOSEF LANGENBACH,

    Plaintiff,

v.                                    Case No.:  2:19-cv-586-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff Klaus Josef Langenbach filed a Complaint on August 20, 2019, (Doc. 1), and an Amended Complaint on August 27, 2019, (Doc. 10).  Plaintiff appeals from the Social Security Administration's ("SSA") decision finding that he has been overpaid Social Security Retirement Insurance Benefits ("RIB") based upon the application of the Windfall Elimination Provision ("WEP").  (Docs. 1, 23).

Specifically, Plaintiff argues that the Commissioner improperly concluded that Plaintiff's German social security benefits necessitated the application of the WEP to his United States RIB.  (Docs. 23 at 5-7, 24 at 1-2).  Plaintiff requests that the Court remand this matter to the Commissioner for further proceedings.  (*Id.*).

The Commissioner asserts that the Administrative Law Judge ("ALJ") evaluated the evidence of record and properly applied the law to determine that the SSA has overpaid Plaintiff $30,967.60 through application of the WEP to Plaintiff's German social security benefits and United States RIB.  (Doc. 23 at 7-15).

On December 4, 2019, the Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) (Doc. 18), and the parties filed a joint memorandum detailing their respective positions on April 15, 2020. (Doc. 23). Additionally, on April 16, 2020, Plaintiff filed Plaintiff's Reply Memorandum – Social Security. (Doc. 24).

For the reasons set forth herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     Background

Plaintiff lived and worked in Germany until roughly 1994 when he came to the United States. (Tr. at 140). Plaintiff estimates that he paid into the Germain Social Security system for roughly 23 years. (*Id.* at 141-42). In 1994, when Plaintiff moved to the United States, he began paying into the United States Social Security system. (*Id.* at 146-47). While working in Germany, Plaintiff paid German social security taxes; while working in the United States, Plaintiff paid United States social security taxes. (*Id.* at 147).

Beginning in January 2006, Plaintiff was awarded monthly RIB of $345.00 by the United States SSA under Title II (Federal Old-Age, Survivors, and Disability Insurance) of the Social Security Act. (*Id.* at 25). Notably, Plaintiff's work in the United States was sufficient for him to qualify for United States RIB without the application of the Totalization Agreement between the United States of America and

the Federal Republic of Germany on Social Security (the "U.S.-German Totalization Agreement").  (*See id.* at 18 n.1, 25-27); *see also* U.S. Soc. Sec. Admin., *U.S.-German Social Security Agreement*, https://www.ssa.gov/international/agreement_texts/germ_agt.html (visited Jan. 29, 2021).  In addition to his monthly United States RIB, Plaintiff began receiving a monthly pension of €493.79 from Germany (the "German Pension") in May 2006.  (Tr. at 45, 143).

Plaintiff collected both payments until September 2015, when he received a "Notice of Change in Benefits" letter from the SSA informing him that he had been overpaid $30,967.60 from May 2006 through August 2015.  (*Id.* at 45).  The SSA determined that Plaintiff's United States RIB were subject to a reduction based on the WEP because he was receiving additional benefits through his German Pension.  (*Id.*).

Plaintiff timely sent a request for reconsideration to the SSA arguing that:  (1) he was not at fault for the $30,967.60 overpayment because the United States SSA had not informed him that he had to report the German Pension; and (2) the WEP should not apply in his case because his foreign employer withheld social security taxes.  (*Id.* at 49).  The SSA scheduled a personal conference on November 17, 2015, and issued a decision on December 5, 2015, finding that Plaintiff was at fault for the alleged overpayment because he had failed to disclose the German Pension in his original application for United States RIB.  (*Id.* at 55, 59-60).

Following this, Plaintiff requested a hearing before an ALJ and argued that: (1) he was not at fault for the overpayment; and (2) the WEP could not apply to the

3

portion of the German Pension that was awarded pursuant to voluntary payments. (*Id.* at 61-62). On March 9, 2017, ALJ Duane Young held a hearing that Plaintiff attended *pro se*. (*Id.* at 15, 133). The ALJ entered an unfavorable decision on December 13, 2017, finding that: (1) Plaintiff was overpaid RIB in the amount of $30,967.60 during the period from May 1, 2006, through August 1, 2015; (2) Plaintiff was at fault for causing the overpayment; (3) the WEP properly applies to Plaintiff's German Pension to reduce the United States RIB; and (4) recovery of the overpayment is not waived by the SSA and Plaintiff is liable for repayment of $30,967.60. (*Id.* at 15-19). The Appeals Council subsequently denied Plaintiff's request for review on June 26, 2019. (*Id.* at 1-4, 129-30).

Thereafter, Plaintiff filed a Complaint with this Court. (Doc. 1). The Commissioner filed an Answer (Doc. 16) and the Transcript (Doc. 18). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Docs. 17, 20). The parties then filed their Joint Memorandum (Doc. 23) and Plaintiff filed a reply brief to the Joint Memorandum (Doc. 24). The case is, thus, ripe for review.

## II.      Calculation of Social Security Benefits

"As a general rule, workers in the United States are taxed to support the payment of social security benefits to the retired and to individuals with disabilities." *Eshel v. Comm'r*, 831 F.3d 512, 514 (D.C. Cir. 2016). The Social Security Act distinguishes between "covered" and "noncovered" employment. *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1156 (11th Cir. 2018) (citing 20 C.F.R. §

4

404.1001(2018)). "Covered employment" is subject to various social security taxes, and "noncovered employment" is exempt from social security taxes. *Id.*; *see also Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003).

Many noncovered employment positions include a separate annuity or pension. *Id.* Similarly, an individual who works in a foreign country and pays into that country's social security system may become entitled to a pension or benefit from that foreign government. *Hawrelak v. Colvin*, 667 F. App'x 161, 162 (7th Cir. 2016). Moreover, a foreign pension or benefit may be based on a totalization agreement, or a foreign pension may not be based on a totalization agreement. *See* Programs Operation Manual System (POMS) GN 01701.301, GN 01701.310.

A retired worker is entitled to United States RIB based on the number of calendar quarters during which the person earned wages from employment subject to social security contribution requirements, "covered employment," over the course of the person's career, provided the person has accrued a minimum number of quarters of coverage. *Beeler v. Berryhill*, 381 F. Supp. 3d 991, 995 (S.D. Ind. 2019), *aff'd sub nom. Beeler v. Saul*, 977 F.3d 577 (7th Cir. 2020) (citing 42 U.S.C. §§ 402(a), 414(a)).

Based on how the SSA calculates RIB,[1] an individual who works in a foreign country and receives a pension from the individual's noncovered employment in that

---

[1] To calculate RIB the SSA adjusts benefits payouts so that individuals with lower average month earnings are entitled to a greater percentage of those earning than an individual with higher earnings. *Martin*, 903 F.3d at 1156. Thus, an individual with covered and noncovered earnings may receive a higher percentage of retirement benefits because his covered earnings are much lower than his total earnings from his

5

country may also be awarded a higher percentage of United States RIB than would generally be awarded.  *See id.*

In 1983, Congress enacted the WEP formula, which applies to social security benefits "to eliminate the unintended 'double dipping' that accrued to workers who split their careers between employment taxed for social security benefits ('covered') and employment exempt from social security taxes ('noncovered')."  *Stroup*, 327 F.3d at 1259.  The WEP, as codified in 42 U.S.C. § 415(a)(7)(A), modifies the default formula for individuals who receive a monthly payment in whole or in part based upon earnings for noncovered work.  *Martin*, 903 F.3d at 1157.  A pension paid by a foreign government is an example of a monthly payment that may be based, in part, on noncovered work.  *Hawrelak*, 667 F. App'x at 162.

The WEP formula, however, has exceptions.  The exception relevant to this case is subsection 415(a)(7)(A)(ii)(II), which provides that any "payment by a social security system of a foreign country based on [a totalization agreement] concluded between the United States and such foreign country" will not cause the WEP to apply.  42 U.S.C. § 415(a)(7)(A)(ii)(II).  Generally, totalization agreements allow individuals who split their careers between two member countries, and who would otherwise lack sufficient periods of coverage to qualify for each country's retirement system, to combine their periods of coverage to establish entitlement to social security benefits.  *See* 42 U.S.C. § 433; U.S. Soc. Sec. Admin., *U.S. International Social*

---

covered and noncovered employment.  *Id.*  The WEP acts to eliminate this discrepancy.  *Id.*

6

*Security Agreements*, https://www.ssa.gov/international/agreements_overview.html (visited Jan. 29, 2021); *see also Hawrelak*, 667 F. App'x at 163.

The U.S.-German Totalization Agreement falls within the category of agreements referenced in the above exception to the WEP. *See id.*; U.S. Soc. Sec. Admin., *U.S.-German Social Security Agreement*, https://www.ssa.gov/international/agreement_texts/germ_agt.html (visited Jan. 29, 2021); *see also* U.S. Soc. Sec. Admin., *Totalization Agreement with Germany*, https://www.ssa.gov/international/agreement_pamphlets/germany.html (visited Jan. 29, 2021). Accordingly, an individual can simultaneously be entitled to regular, non-totalization United States RIB and a foreign pension based on a totalization agreement with the United States without the WEP applying to reduce the individual's benefits. *See* Programs Operation Manual System (POMS) GN 01701.301C.4, GN 01701.310.

Against this backdrop, the Court turns to the appropriate legal standards.

**III.**     **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and

7

must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

During this Court's review, it must also determine whether the ALJ applied the appropriate legal standards. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). If the ALJ fails to delineate and apply the appropriate legal standards, the ALJ's findings must be vacated and the case remanded for clarification. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *Wiggins*, 679 F.2d at 1389 ("Failure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal.").

## IV.     Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, the issues are:

1. The ALJ's decision is not supported by substantial evidence and is contrary to law because he did not address all the issues related to Plaintiff's overpayment case that were raised before him; and

2. Plaintiff is entitled to remand based on the Supreme Court's decision in *Lucia v. SEC*; based on this holding the ALJ in this case was not appointed consistent with the requirements of the U.S. Constitution, and the case should be remanded to a different ALJ who has been correctly appointed.

(Doc. 23 at 4). The Court will address the first issue below.

### A.     Whether the ALJ Properly Applied the WEP to Plaintiff's Social Security Benefits

Plaintiff frames his argument by summarizing the relevant law that an ALJ dealing with an unrepresented claimant has a heightened obligation to develop the record and "explore all the relevant facts." (*Id.* at 4-5 (citing *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *Pilnick v. Comm'r of Soc. Sec. Admin.*, No. 07-11789, 2007 WL 3122168, at *1 (11th Cir. Oct. 26, 2007))). Plaintiff goes on to explain that, in his specific case, the issues before the ALJ were: (1) whether the WEP could be properly applied to Plaintiff's RIB to support a finding of overpayment; and (2) if the WEP could be properly applied, whether overpayment should be waived by the SSA. (*See id.* at 5).

Plaintiff argues that, despite his assertion of both issues "at all administrative levels," the ALJ only addressed the second issue, whether overpayment could be waived. (*Id.* at 6). Plaintiff asserts that both issues are inextricably intertwined, and therefore, the ALJ's apparent failure to address the first issue necessitates remand. (*Id.* at 5-6).

Moreover, Plaintiff contends that the ALJ's failure to address the first issue is clearly harmful. Plaintiff argues that if the ALJ had accurately determined whether the WEP applies to Plaintiff's case, he would have found that the WEP does not apply and no overpayment occurred. (*See id.* at 6-7). In support, Plaintiff argues that 20 C.F.R. § 404.213(e)(7) states that "[f]or benefits payable for months after December 1994, payments by the social security system of a foreign country which

are based on a totalization agreement between the United States and that country are not considered to be a pension from noncovered employment for purposes of this section." (*Id.* at 6 (citing 20 C.F.R. § 404.213(e)(7))). Plaintiff asserts that his German Pension falls within this rule because it is being paid by Germany based on a totalization agreement and that he presented evidence to support this argument to the ALJ and the Appeals Council. (*Id.* (citing Tr. at 63, 130)).

Finally, Plaintiff asserts that, because he was unrepresented during his hearing, the ALJ should have developed the record further to obtain any necessary additional evidence to determine whether Plaintiff's Germain Pension falls within an exception to the WEP. (*Id.*); *see also* 20 C.F.R. § 404.213(e)(7); 42 U.S.C. § 415(a)(7)(A)(ii)(II); Social Security Administration Program Operation Manual System (POMS) GN 01701.315 ("The only acceptable evidence that a foreign pension is based on an agreement with the United States is a document (*e.g.*, award notice or letter) issued by the foreign agency paying the pension. The document must indicate that the pension is based on an agreement with the United States.").

In response, the Commissioner argues that the ALJ properly evaluated the evidence of record and correctly applied the law to determine that the agency overpaid Plaintiff $30,967.60. (Doc. 23 at 8). The Commissioner goes on to argue that Plaintiff was not entitled to a waiver of the overpayment because Plaintiff was "at fault" for causing the overpayment and recovery of the overpayment would not defeat the purpose of Title II of the Act. (*Id.* at 8-11).

The Commissioner also contends that the ALJ considered and addressed the authority Plaintiff presented to argue that the WEP should not apply in his case. (*Id.* at 11 (citing Tr. at 18, 157)). Specifically, the Commissioner argues that POMS GN 01701.320 does not list Germany as a country with a pension that avoids application of the WEP. (*Id.*).

Additionally, the Commissioner asserts that the ALJ correctly found that the U.S.-German Totalization Agreement is irrelevant in Plaintiff's case. (*Id.* at 12). The Commissioner argues that this determination was correct because Plaintiff worked and paid into the United States retirement system for 10 years and, therefore, had enough quarters of coverage to be entitled to United States RIB without application of the U.S.-German Totalization Agreement. (*Id.* (citing Tr. at 18, 21, 139-140; POMS GN 01701.005)). Accordingly, the Commissioner argues that the ALJ correctly found Plaintiff was not entitled to a totalization benefit for his United States RIB and the WEP would apply to Plaintiff's German Pension and United States RIB. (*Id.* (citing POMS GN 01701.200)).

Finally, the Commissioner argues that the ALJ met his "basic obligation to develop a full and fair record" in light of Plaintiff's voluntary waiver of his right to representation during the hearing. (*Id.* at 13-14 (citing Tr. at 123, 133, 134)).

In his reply brief, Plaintiff reiterates his earlier arguments. He also asserts that the Commissioner failed to address 20 C.F.R. § 404.213(e)(7), POMS GN 01701.310, and the fact that Plaintiff claims to have submitted evidence that his

11

German Pension is being paid pursuant to the U.S.-German Totalization Agreement.  (Doc. 24 at 1-2).

As an initial matter, the Court notes that the POMS is an internal Social Security Administration document outlining, *inter alia*, various policies of the Commissioner and while it does not have the force of law, it can be persuasive. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).

Considering the parties' arguments and the applicable legal standards, the Court finds that the ALJ erred by failing to determine whether Plaintiff's German Pension is being paid pursuant to the U.S.-German Totalization Agreement.  While the ALJ correctly found that the U.S.-German Totalization Agreement is inapplicable to Plaintiff's United States RIB because Plaintiff has 40 quarters of coverage, (Tr. at 18 n.1; *see also* 20 U.S.C. § 414(a)), the ALJ erred when he made no findings regarding whether the German Pension, a payment separate and distinct from Plaintiff's United States RIB, is being paid pursuant to the U.S.-German Totalization Agreement, *see* POMS GN 01701.310 ("Beginning January 1995, a foreign pension that is based on a totalization agreement with the United States will not cause the WEP to apply in the computation of a non-totalization U.S. benefit.").

Because the ALJ failed to determine whether the German Pension is being paid pursuant to the U.S.-German Totalization Agreement, he prematurely concluded that the WEP would apply to Plaintiff's benefits.  *See* POMS GN 01701.310 ("A foreign pension is not based on [a totalization agreement] if the beneficiary met the normal entitlement requirements of the other country's laws and

12

did not rely on the agreement to establish entitlement."); *see also Hawrelak v. Colvin*, 667 F. App'x 161, 163 (7th Cir. 2016) (holding that because the ALJ found Plaintiff's foreign pension was not based on a totalization agreement the 42 U.S.C. § 415(a)(7)(A)(ii)[(II)] exception to the WEP does not apply). In a similar situation, the Seventh Circuit found that:

> The WEP does not apply to a payment by a social security system of a foreign country based on a totalization agreement under section 233 of the Act. 42 U.S.C. § 415(a)(7)(A)[(ii)](II). Plaintiffs' [Canadian pension] benefit payments are not within the exclusion, however, because Plaintiffs are eligible to receive them independently, without resort to combination or totalization.

*Beeler v. Berryhill*, 381 F. Supp. 3d 991, 1006 (S.D. Ind. 2019), *aff'd sub nom. Beeler v. Saul*, 977 F.3d 577 (7th Cir. 2020). Because the ALJ in *Beeler* found that the foreign pension was not based on a totalization agreement, the WEP properly applied to the plaintiffs' benefits. However, where there has been no finding as to whether a plaintiff's foreign benefit is being paid under a totalization agreement, as in the instant case, the Court cannot determine whether the WEP exclusion under 42 U.S.C. § 415(a)(7)(A)(ii)(II) applies to the plaintiff's benefits.

Although the Court finds that the ALJ erred, as noted above, an incorrect application of the regulations will result in a harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). In this case, the Court is not a finder of fact and, thus, does not know what impact Plaintiff's allegations as to whether his

13

German Pension was paid under the U.S.-German Totalization Agreement might have on the ALJ's decision. Plaintiff alleges that the documentation he submitted pursuant to POMS GN 01701.315 supports his claim. (Doc. 23 at 7 (citing Tr. at 63, 130)). The ALJ's decision, however, does not reflect that he considered whether the German Pension was being paid based on the U.S.-German Totalization Agreement. A finding that Plaintiff's German Pension falls within the 42 U.S.C. § 415(a)(7)(A)(ii)(II) exception to the WEP would clearly alter the ALJ's entire analysis. The Court cannot find, therefore, that the ALJ's failure to consider whether Plaintiff's German Pension was paid under the U.S.-German Totalization Agreement was harmless.

Additionally, the Court is unpersuaded by the Commissioner's argument that POMS GN 01701.320 indicates that a German pension cannot avoid the application of the WEP. POMS GN 01701.301C.4 presents a hypothetical example of a claimant with a regular, non-totalization United States RIB and a pension from Germany. The POMS GN 01701.301C.4 example states that, beginning January 1995, the WEP would no longer apply to a German pension if it is based on a totalization agreement with the United States, notwithstanding the hypothetical claimants entitlement to a regular United States benefit. All of this taken together suggests that POMS GN 01701.320 does not contain an exhaustive list of foreign pensions that will not trigger the application of the WEP.

Additionally, the Court finds that, while Plaintiff knowingly and voluntarily waived his right to representation during the hearing, (Tr. at 123, 133, 134), the ALJ

14

failed to meet his basic obligation to develop a full record when he failed to analyze the basis of Plaintiff's German Pension, an analysis that requires examination of evidence on whether the foreign pension is based on a totalization agreement.

As a final matter, although the Commissioner argues that the alleged overpayment cannot be waived because Plaintiff is at fault for causing an overpayment and recovery of the overpayment would not defeat the purpose of Title II of the Act, the Court declines to address the argument because remand is appropriate on other grounds.

In sum, without a finding that Plaintiff's German Pension is not based on a totalization agreement, the Court cannot determine whether the WEP properly applies to reduce Plaintiff's benefits. The lack of this essential finding on the record is harmful to Plaintiff and necessitates remand to the ALJ to make a determination on the issue.

### B. Plaintiff's Remaining Argument

Plaintiff's remaining argument alleges that the Administrative Law Judge overseeing Plaintiff's case was not appointed consistent with the requirements of the U.S. Constitution. (Doc. 10). The Court declines to address the issue of administrative exhaustion and its effects on the Appointments Clause because it finds remand appropriate on other grounds. Additionally, the Court notes that this issue is currently pending before the Supreme Court of the United States. *See Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020), *cert. granted*, No. 20-105, 2020 WL 6551772 (U.S. Nov.

9, 2020); *Carr v. Comm'r*, 961 F.3d 1267 (10th Cir. 2020), *cert. granted*, No. 20-105, 2020 WL 6551771 (U.S. Nov. 9, 2020).

**V.      Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ erred by failing to determine whether Plaintiff's German Pension was being paid based on the U.S.-German Totalization Agreement. Accordingly, the Court **ORDERS** that:

1. The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2. On remand, the Commissioner must determine whether Plaintiff's German Pension is based on the U.S.-German Totalization Agreement, qualifying Plaintiff's benefits for an exception to the WEP under 42 U.S.C. § 415(a)(7)(A)(ii)(II). *See also* POMS GN 01701.310, GN 01701.315A, GN 01701.301C.4.

3. If Plaintiff prevails on remand, Plaintiff must comply with the November 14, 2012 Order (Doc. 1) in Case Number 6:12-mc-124-Orl-22.

4. The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 15, 2021.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties